**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

Jonathan Nootens, individually and on behalf
of all others similarly situated,

                    Plaintiff,

          - against -

Molson Coors Beverage Company,

                    Defendant

1:22-cv-07010

Class Action Complaint

Jury Trial Demanded

Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1.    Molson Coors Beverage Company ("Defendant") manufactures, labels, markets, distributes, and sells "Ranch Water Hard Seltzer" containing "100% Agave & Real Lime Juice" containing "Spiked Sparkling Water" under the Topo Chico brand ("Product").




2.     The label includes pictures of the agave plant, the source crop for tequila and states "4.7% Alc. Vol." ("ABV" or alcohol by volume).

## I.     ORIGINS OF RANCH WATER

3.     Ranch water likely originated in the 1960s in the blazing sun on West Texas ranches where cowboys worked long days.

4.     They would often begin the day with a thermos full of tequila and ice, and after lunch they would add lime, a staple of their Tex-Mex cuisine.

5.     At some point, carbonated water was added to improve refreshment.

6.     Ranch water's popularity has spread beyond Texas for numerous reasons.

7.     First, according to the founder of a brand of ranch water, its lack of a sweetener dovetails with consumers' "shift[ing] away from sugary, high-calorie cocktails."

8.     Second, its limited and simple ingredients are consistent with consumer avoidance of beverages with synthetic components in favor of what they can make at their backyard parties.

9.     Third, ranch water is not highly processed through complicated machinery, and made by pouring tequila, lime juice and sparkling water over ice, a formula that works even for canned and ready-to-drink ("RTD") versions.

10.     This means RTD ranch water will be similar to those made and served at authentic Texas icehouses, open-air dive bars where Texans go to cool off.

11.     Fourth, tequila, based on the agave plant, is "the fastest-growing spirits category," resulting in its use in numerous canned beverages.

12.     Fifth, ranch water fits into the trend of "better for you" alcoholic drinks which are based on alcohol but contain natural and simple ingredients including fruit.

13.     Sixth, novel technologies and regulatory adjustments have resulted in a boom of

"canned cocktails," which are alcoholic beverages containing spirt ingredients instead of having a base of malt liquor or beer based on sugar or barley.

14.    Seventh, ranch water is considered an "upgrade to a hard seltzer," made with "vague ingredients such as malted liquor and natural flavors," as opposed to sparkling water, lime and tequila.[1]

15.    Eighth, its roots in the western rancher mythos appeal to a sense of adventure.

## II.    LABEL INDICATES PRODUCT WILL CONTAIN RANCH WATER INGREDIENTS

16.    Consumers will expect the Product contains ingredients associated with ranch water because that is what the packaging and label tells them.

17.    First, "Hard Seltzer" beneath "Ranch Water" contributes to the expectation the Product will contain tequila because "hard" in the context of alcohol refers to distilled spirits or "hard liquor."

18.    The one exception applies to the fermented apple beverage of "hard cider."

19.    Various theories exist about how the term "hard" became associated with cider.

20.    One contends that "hard" was implicit in the Middle English definition of cider as a "strong drink."

21.    Another posits that "hard" distinguished fermented apple juice with alcohol from non-fermented and non-alcoholic fresh pressed apple juice.

22.    Based on this historical association, the IRS and regulatory authorities adopted the term "hard cider" only in the context of fermented apple beverages.

23.    Outside of this context, however, consumers understand "hard" in the context of

---

[1]  https://www.thedrinksbusiness.com/2022/05/how-tequila-and-hard-seltzer-trends-are-boosting-ranch-waters-popularity/

alcoholic beverages to refer to distilled spirits, like tequila.

24.    Second, the description of the Product as "Spiked Sparkling Water" exploits consumers' understanding of "spiked" referring to the addition of hard liquor to a non-alcoholic drink.

25.    While companies like Defendant "take advantage of the consumer's lack of knowledge about both 'ranch water' and hard seltzer itself to sell them a drink full of fake tequila flavors," RTD ranch water brands which contain tequila, sparkling water and real lime are sold by competitor brands like Ranch Rider and are not technologically or commercially unfeasible.



## III.    PRODUCT LACKS TEQUILA AND ADDS SWEETENER

26.    The representations are misleading because though the ingredient list discloses carbonated water and lime, it fails to list tequila and adds a sweetener in the form of "agave syrup," from the source crop of tequila.

4

**INGREDIENTS:** FILTERED CARBONATED WATER, ALCOHOL, LIME JUICE FROM CONCENTRATE, NATURAL FLAVORS, AGAVE SYRUP, SODIUM CITRATE, CITRIC ACID, MAGNESIUM CHLORIDE*, SALT*, POTASSIUM CHLORIDE*. (MINERALS FOR TASTE)

27. Even if purchasers read the ingredient list, they will only be told the Product contains "alcohol," not that this alcohol is not from tequila.

28. Even if purchasers read the ingredient list, by listing "alcohol" instead of "alcohol (from fermented sugar)," consumers are not told its source is not tequila and agave.

29. Though alcoholic beverages such as the Product are required to indicate the class they fit into, "Ranch Water" above "Hard Seltzer" and "Spiked Sparking Water" fails to do so.

30. Consumers are not told the Product they are buying not only lacks tequila but is classified as a flavored beer.

31. One writer noted that "[E]ven despite the hard seltzer boom … many consumers still don't understand, or care to understand" that products sold as "hard seltzer" typically "make use of alcohol created by fermentation, rather than blending in small amounts of distilled spirits with sparkling water."[2]

32. The article stated that "spreading the concept of ranch water to the masses, [through] hard seltzer[s] with the words 'ranch water' slapped across [it]" is "inherent deception."

33. Companies like Defendant "do nothing to dissuade the consumer from assuming that there's actual tequila in their drink, and [] actually appear[s] to be reinforcing the deception with

---

[2] Jim Vorel , Hard Seltzer and "Ranch Water" are a Perfect Combination ... for Deception, Sept. 21, 2021.

their choices in marketing language" such as "100% Agave & Real Lime Juice" containing "Sparkling Water."

34.    Paste Magazine noted that "'100% [] agave' [] is [] a clever turn of phrase [because] tequila is a product of 100% agave," but that this "presumably refer[s] to the fact that the Product also contains agave nectar for sweetening."

35.    The Product "can't genuinely reproduce the actual flavor profile of ranch water, because 'alcohol from sugar' [] … is just neutrally flavored booze that doesn't taste like tequila."

36.    Nor does "agave nectar" taste like tequila, even though both are from the agave plant.

37.    This result is that "the entire burden of the 'tequila' part of a canned ranch water seltzer – the part that is supposed to be the core of the flavor profile – on the 'natural flavors' … [W]hich is to say, fake tequila flavoring."

38.    Finally, the Product does not include Topo Chico naturally sparkling mineral water from Mexico, which is essential to a ranch water sold under this brand.

39.    When people make ranch water and add Topo Chico, they are doing so because they value the contributions of its water to the beverage.

## IV.    CONCLUSION

40.    The Product contains other representations and omissions which are false and misleading.

41.    As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than $18.99 for a twelve-pack of 12 oz cans, excluding tax and sales.

<u>Jurisdiction and Venue</u>

42.    Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C.

§ 1332(d)(2).

43.    The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

44.    Plaintiff is a citizen of Illinois.

45.    Defendant is a Delaware corporation with a principal place of business in Illinois.

46.    The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

47.    The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold with the representations described here from thousands of stores and over the internet, in the States Plaintiff seeks to represent.

48.    Venue is in this District with assignment to the Eastern Division because a substantial part of the events or omissions giving rise to these claims occurred in Kendall County, including Plaintiff's purchase, reliance on the identified statements, and subsequent awareness these were false and misleading.

<u>Parties</u>

49.    Plaintiff Jonathan Nootens is a citizen of Oswego, Kendall County, Illinois.

50.    Defendant Molson Coors Beverage Company is a Delaware corporation with a principal place of business in Chicago, Cook County, Illinois.

51.    Defendant is one of the world's largest sellers of alcoholic beverages under dozens of brands.

52.    The Topo Chico brand of sparkling mineral water is strongly linked to ranch water, due to its Mexican origins and that country's border with Texas.

53.    Plaintiff purchased the Product at locations including but not necessarily limited to

Walmart in Oswego, Illinois, in the fall of 2022, and/or among other times.

54.    Plaintiff read "Ranch Water," "Hard Seltzer," "Spiked," and "100% Agave & Real Lime Juice," and expected the Product contained alcohol from tequila.

55.    Plaintiff bought the Product at or exceeding the above-referenced price.

56.    Plaintiff paid more for the Product than he would have had he known the above-referenced facts or would not have purchased it.

57.    The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

58.    Plaintiff chose between this Product and others represented similarly, but which did not misrepresent their attributes, requirements, instructions, features, and/or components.

59.    Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance its representations are consistent with its abilities, attributes, and/or composition.

60.    Plaintiff is unable to rely on the labeling and representations not only of this Product, but other brands of ranch water, because he is unsure whether those representations are truthful.

<u>Class Allegations</u>

61.    Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Illinois Class:** All persons in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged; and
>
> **Consumer Fraud Multi-State Class**: All persons in the States of Texas, South Dakota, Wyoming, Idaho, Alaska, Iowa, Mississippi, West Virginia, Arkansas, South Carolina, Maine and Utah who purchased the Product during the statutes of limitations for each cause of action alleged.

62.    Common questions of issues, law, and fact predominate and include whether

Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

63.     Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

64.     Plaintiff is an adequate representative because his interests do not conflict with other members.

65.     No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

66.     Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

67.     Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

68.     Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>Illinois Consumer Fraud and Deceptive Business Practices Act</u>
<u>("ICFA"), 815 ILCS 505/1, <em>et seq.</em></u>

69.     Plaintiff incorporates by reference all preceding paragraphs.

70.     Plaintiff saw and relied on the label and expected the Product contained some alcohol from tequila.

71.     Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Violation of State Consumer Fraud Acts</u>
<u>(Consumer Fraud Multi-State Class)</u>

72.     The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or

deceptive business practices in the conduct of commerce.

73.    The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

74.    Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, which they did, suffering damages.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose
and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

75.    The Product was manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff that it contained some alcohol from tequila.

76.    Defendant directly marketed the Product to Plaintiff through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions, and targeted digital advertising.

77.    Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet their needs and desires, which was alcohol from distilled spirits and tequila.

78.    The representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant it contained some alcohol from tequila.

79.    Defendant's representations affirmed and promised that it contained some alcohol from tequila.

80.    Defendant described the Product so Plaintiff believed it contained some alcohol from tequila, which became part of the basis of the bargain that it would conform to its affirmations and promises.

81.     Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

82.     This duty is based on Defendant's outsized role in the market for this type of Product, custodian of the Topo Chico brand of ranch water.

83.     Plaintiff recently became aware of Defendant's breach of the Product's warranties.

84.     Plaintiff provided or provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's warranties.

85.     Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

86.     The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

87.     The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container, or label, because it was marketed as if it contained some alcohol from tequila.

88.     The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because he expected that it contained some alcohol from tequila, and he relied on its skill and judgment to select or furnish such a suitable product.

<u>Negligent Misrepresentation</u>

89.     Defendant had a duty to truthfully represent the Products, which it breached.

90.     This duty was non-delegable, based on Defendant's holding itself out as having

special knowledge and experience in this area, custodian of the Topo Chico brand, most associated with ranch water.

91.    Defendant's representations and omissions regarding the Product went beyond the specific representations on the packaging, and incorporated the extra-labeling promises and commitments to quality and transparency the Topo Chico brand has been known for, especially when it comes to ranch water.

92.    These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

93.    The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

94.    Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, his purchase of the Product.

<u>Fraud</u>

95.    Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it contained some alcohol from tequila.

96.    Defendant knows the Product does not contain tequila but relies on consumers' confusion about ranch water and the term "hard seltzer" to make them think otherwise.

<u>Unjust Enrichment</u>

97.    Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

   **WHEREFORE**, Plaintiff prays for judgment:

1. Certifying Plaintiff as representative and the undersigned as counsel for the classes;

2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3. Awarding monetary, statutory and/or punitive damages and interest;

4. Awarding costs and expenses, including reasonable attorney and expert fees; and

5. Other and further relief as the Court deems just and proper.

Dated:   December 13, 2022

                             Respectfully submitted,

                             /s/ Spencer Sheehan

                             Sheehan & Associates, P.C.
                             60 Cuttermill Rd Ste 412
                             Great Neck NY 11021
                             (516) 268-7080
                             spencer@spencersheehan.com