**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

Jonathan Nootens, Individually and on behalf
of all others similarly situated,

        Plaintiff,

     - against -

Molson Coors Beverage Company,

        Defendant.

  Case: 1:22-cv-07010

  Class Action

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**
**PLAINTIFF'S COMPLAINT**

LOEB & LOEB LLP
Laura K. McNally
Emily H. Stone
321 North Clark Street, Suite 2300
Chicago, IL 60654
Telephone: 312.464.3100
Facsimile: 312.464.3111
lmcnally@loeb.com
estone@loeb.com

Andrew M. Hutchison
ahutchison@loeb.com
Two Embarcadero Center, Suite 2510
San Francisco, CA 94111
Telephone: 415.903.3200
Facsimile: 415.903.3299

*Attorneys for Defendant*
*Molson Coors Beverage Company USA, LLC*

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL BACKGROUND ............................................................................... 2

     A.    The Hard Seltzer Market and Topo Chico's Ranch Water Hard Seltzer ............... 2

     B.    Plaintiff's Complaint ........................................................................................ 3

III.   ARGUMENT ...................................................................................................... 5

     A.    Legal Standard .................................................................................................. 5

     B.    The Product's Packaging is Not Misleading to a Reasonable Consumer ............... 6

          1.    "Ranch Water" Identifies the Flavor of Hard Seltzer ................................. 7

          2.    The Label Does Not Otherwise Suggest That the Product Contains Tequila ................................................................................. 9

     C.    Plaintiff's Fraud Claim Fails for the Same Reasons as His ICFA Claim ............. 12

     D.    Plaintiff's Warranty Claims Fail as a Matter of Law ............................................ 12

     E.    The Economic Loss Rule Bars Plaintiff's Negligent Misrepresentation Claim ........................................................................................................... 14

     F.    Unjust Enrichment is Not an Independent Cause of Action ................................. 14

     G.    Plaintiff Does Not Have Standing to Seek Injunctive Relief ............................... 15

IV.   CONCLUSION ................................................................................................. 15

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*Akers v. Costco Wholesale Corp.*,
    No. 3:21-CV-01098-NJR, 2022 U.S. Dist. LEXIS 177837 (S.D. Ill. Sep. 29, 2022) ............. 13

*All. Acceptance Co. v. Yale Ins. Agency*,
    271 Ill. App. 3d 483, 648 N.E.2d 971 (1st Dist. 1995) ......................................................... 14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................................................. 5

*Beardsall v. CVS Pharmacy, Inc.*,
    953 F.3d 969 (7th Cir. 2020) .................................................................................................... 6

*Bell v. Publix Super Markets, Inc.*,
    982 F.3d 468 (7th Cir. 2020) ................................................................................................ 6, 9

*Benson v. Fannie Mae Confections Brands, Inc.*,
    944 F.3d 639 (7th Cir. 2019) .................................................................................................... 6

*Biczo v. Ferrara Candy Co.*,
    No. 22-cv-01967, 2023 U.S. Dist. LEXIS 46294 (N.D. Ill. Mar. 20, 2023) ......... 10, 12, 14, 15

*Connick v. Suzuki Motor Co.*,
    174 Ill. 2d 482, 675 N.E.2d 584 (1996) .......................................................................... 12, 13

*DeMaso v. Walmart, Inc.*
    No. 21-cv-6334, 2023 U.S. Dist. LEXIS 20316 (N.D. Ill. Feb. 7, 2023) ............................. 8, 9

*Future Proof Brands, L.L.C. v. Molson Coors Bev. Co.*,
    982 F.3d 280 (5th Cir. 2020) .................................................................................................... 2

*Hamidani v. Bimbo Bakehouse LLC*,
    No. 22-cv-01026, 2023 U.S. Dist. LEXIS 5848 (N.D. Ill. Jan. 12, 2023) ........ 6, 12, 13, 14, 15

*Hauger v. Dollar Gen. Corp.*,
    No. 1:21-cv-01270-JES-JEH, 2022 U.S. Dist. LEXIS 119715 (C.D. Ill. July 7, 2022) ........... 8

*Khaimova v. Anheuser-Busch, LLC*,
    1:21-cv-05268 (N.D. Ill.) ......................................................................................................... 2

*Lederman v. Hershey Co.*,
    No. 21-cv-4528, 2022 U.S. Dist. LEXIS 149339 (N.D. Ill. Aug. 19, 2022) ......................... 10

23707856.5
241311-10004

*Moorman Mfg. Co. v. Nat'l Tank Co.*,
   91 Ill. 2d 69, 435 N.E.2d 443 (1982) ............................................................ 14

*Muir v. Nature's Bounty, Inc.*,
   No. 15 C 9835, 2017 U.S. Dist. LEXIS 159679 (N.D. Ill. Sep. 28, 2017) ............................ 6

*Nelson v. MillerCoors, LLC*,
   246 F. Supp. 3d 666 (E.D.N.Y. 2017) .................................................................. 3

*O'Connor v. Ford Motor Co.*,
   477 F. Supp. 3d 705 (N.D. Ill. 2020) ................................................................. 13

*Reinitz v. Kellogg Sales Co.*,
   No. 21-cv-1239-JES-JEH, 2022 U.S. Dist. LEXIS 98580 (C.D. Ill. June 2, 2022) ............ 7, 8

*Robinson v. Walgreen Co.*,
   No. 20 C 50288, 2022 U.S. Dist. LEXIS 12188 (N.D. Ill. Jan. 24, 2022) .............................. 2

*Siegel v. Shell Oil Co.*,
   612 F.3d 932 (7th Cir. 2010) ............................................................................... 6

*Silha v. ACT, Inc.*
   807 F.3d 169 (7th Cir. 2015) ............................................................................... 5

*Smith v. Gen. Mills Sales, Inc.*,
   No. 22 CV 1529, 2023 U.S. Dist. LEXIS 35701 (N.D. Ill. Mar. 3, 2023) ...................... 14, 15

*Suzie's Brewery Co. v. Anheuser-Busch Cos., LLC*,
   519 F. Supp. 3d 839 (D. Or. 2021) ..................................................................... 11

*Thornley v. Clearview AI, Inc.*,
   984 F.3d 1241 (7th Cir. 2021) ............................................................................. 5

*Vanzant v. Hill's Pet Nutrition, Inc.*,
   934 F.3d 730 (7th Cir. 2019) ............................................................................... 5

*Zahora v. Orgain LLC*,
   No. 21 C 705, 2021 U.S. Dist. LEXIS 213525 (N.D. Ill. Nov. 4, 2021) .............................. 10

**Statutes**

810 ILCS 5/2-607(3)(a) ............................................................................ 12, 13

Illinois Consumer Fraud Act ........................................................................ 5, 6, 8, 12

Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(1) ............................................. 13

23707856.5
241311-10004

**Other Authorities**

Cambridge Dictionary ......................................................................................................... 2

Collins Dictionary ......................................................................................................... 2, 11

Fed. R. Civ. P.  9(b) ............................................................................................................ 5

Fed. R. Civ. P. 12(b)(1) ................................................................................................. 5, 15

https://dictionary.cambridge.org/us/dictionary/english/hard-seltzer ................................. 2

https://en.wikipedia.org/wiki/Hard_seltzer ....................................................................... 2

https://www.collinsdictionary.com/dictionary/english/spiked ........................................ 11

https://www.collinsdictionary.com/us/dictionary/english/hard-seltzer ............................. 2

https://www.merriam-webster.com/dictionary/spiked ..................................................... 11

Merriam Webster's Dictionary ........................................................................................ 11

23707856.5
241311-10004

## I.     INTRODUCTION

Molson Coors Beverage Company USA, LLC's ("Defendant") Topo Chico Hard Seltzer is a line of adult, alcoholic sparkling-water beverages. Available in a variety of flavors, it is typically sold in the beer aisle, alongside other hard seltzer and hard lemonade products. Plaintiff Jonathan Nootens ("Plaintiff") alleges that, in fall 2022, he bought a 12-pack of the ranch water-flavored variant, "Topo Chico Ranch Water Hard Seltzer" (the "Product") for the modest price of $18.99 at Walmart. Plaintiff evidently enjoyed the Product, as he purchased it multiple times. Now, however, he alleges that he expected the Product to be a ranch water *cocktail* rather than a *hard seltzer*, and was purportedly disappointed to learn that it did not contain tequila – even though the product is clearly labeled "hard seltzer" and does not make *any* mention of tequila.

Plaintiff purchased a 12-pack of "Hard Seltzer" – a well-established product category widely understood to contain sparkling water and alcohol from sugar or malt fermentation – that was clearly labeled as such in large letters both on the secondary packaging as well on the front label of each can. Nowhere, including the ingredient list, did the Product's label make any reference to "tequila," "hard liquor," or "distilled spirits." Instead, Plaintiff alleges that he "read 'Ranch Water,' 'Hard Seltzer,' 'Spiked,' and '100% Agave & Real Lime Juice,'" and somehow transformed that into an expectation that the Product contained tequila. (Compl. ¶ 54.) In his unsuccessful attempt to support this claimed expectation, Plaintiff tries to redefine common terms such as "hard" and "spiked" to refer only to distilled spirits (in contradiction to the definition of dictionaries and courts alike), and strains to twist "agave" (a popular sweetener) into a synonym of "tequila." As discussed below, the phrase "Ranch Water" and the reference to 100% Agave describe the flavor of the hard seltzer. No reasonable consumer would be misled into believing that any of these phrases, in the context of the Product's packaging, mean the Product contains tequila.

For these reasons and more, Plaintiff's claims under Illinois's consumer protection statutes

23707856.5
241311-10004

and related common law causes of action fail as a matter of law. Accordingly, the Court should grant Defendant's Motion and dismiss the Complaint with prejudice.

## II.    FACTUAL BACKGROUND

### A.    The Hard Seltzer Market and Topo Chico's Ranch Water Hard Seltzer

Defendant manufactures and sells a line of hard seltzer products in a variety of flavors under the Topo Chico Hard Seltzer brand name. Hard seltzers have in recent years enjoyed "skyrocketing popularity in the United States." *Future Proof Brands, L.L.C. v. Molson Coors Bev. Co.*, 982 F.3d 280, 287 (5th Cir. 2020). A "hard seltzer" is typically defined as a ready-to-drink alcoholic beverage consisting of (1) carbonated water (i.e., seltzer); (2) flavoring; and (3) alcohol derived from sugar or malt fermentation, as opposed to distillation. Wikipedia, for example, defines hard seltzer as a "drink containing seltzer (carbonated water), alcohol, and often fruit flavorings," and specifically notes that in the United States, "the alcohol is usually made by fermenting cane sugar; sometimes malted barley is used." *See* "Hard Seltzer," Wikipedia[1]; *see also* Cambridge Dictionary (defining hard seltzer as "a drink consisting of carbonated water, alcohol, and flavoring: [h]ard seltzer is made similarly to beer")[2]; Collins Dictionary (defining hard seltzer as "a beverage containing carbonated water, alcohol, and usually a fruit flavouring").[3] As Plaintiff notes, because hard seltzers are typically made with fermented rather than distilled alcohol, they may be technically classified as flavored beer. (Compl. ¶¶ 30-31.) Plaintiff's counsel has alleged in other recently-filed lawsuits that consumers know that "a typical hard seltzer [is] made from cane sugar."[4]

---

[1] *See* https://en.wikipedia.org/wiki/Hard_seltzer (last accessed Mar. 27, 2023). This standard dictionary definition is appropriate for consideration on a motion to dismiss. *See, e.g., Robinson v. Walgreen Co.*, No. 20 C 50288, 2022 U.S. Dist. LEXIS 12188, at *23-24 (N.D. Ill. Jan. 24, 2022) (considering dictionary definition to hold that representation was not misleading as a matter of law on motion to dismiss).

[2] *See* https://dictionary.cambridge.org/us/dictionary/english/hard-seltzer (last accessed Mar. 27, 2023).

[3] *See* https://www.collinsdictionary.com/us/dictionary/english/hard-seltzer (last accessed Mar. 27, 2023).

[4] *Khaimova v. Anheuser-Busch, LLC*, 1:21-cv-05268 (N.D. Ill.) at Dkt. 1, ¶ 49.

As with most hard seltzers, Defendant's Topo Chico Hard Seltzers are available in a variety of flavors, including the "Ranch Water" flavored hard seltzer that Plaintiff allegedly purchased. The Product is clearly labeled a "Hard Seltzer" both on the can and on the 12-can secondary packaging pictured in Plaintiff's Complaint. (*See id*.) Typical of other hard seltzers, which are generally made with alcohol from fermented cane sugar, the Product does not indicate that it is made with distilled spirits: the word "tequila" does not appear anywhere on the Product packaging; nor do the phrases "distilled spirits" or "hard liquor." (*See id*. ¶¶ 1, 26.) Because it is sweetened with agave syrup, the label also includes an image of agave plants and factually states that the Product is made with "100% Agave." (*Id*.) The label's back panel accurately lists the Product's ingredients, including "alcohol" and "agave syrup." (*Id*. at ¶ 26.)

### B. Plaintiff's Complaint

Plaintiff, an Illinois resident, alleges that he purchased the Product in the fall of 2022, "and/or among other times," at locations including a Walmart in Oswego, Illinois. (Compl. ¶ 49.) Plaintiff claims that he "read 'Ranch Water,' 'Hard Seltzer,' 'Spiked,' and '100% Agave & Real Lime Juice,' and" – despite tequila never being mentioned or included in the ingredient list – "expected the Product contained alcohol from tequila."[5] (*Id.* ¶ 54.) Plaintiff alleges that he paid more for the

---

[5] Plaintiff also appears to allege (though each of his causes of action refers only to allegedly misleading representations about the presence of tequila) that the Product's packaging is misleading because it does not contain naturally sparkling mineral water from Mexico. (*See id.* ¶ 38.) However, the Product's labeling identifies it multiple times as "hard seltzer" and "spiked sparkling water" with "minerals added for taste," and never as "mineral water" of any kind. (*See id.* ¶ 1). The ingredients on the back panel clarifies that the product is made from "filtered carbonated water," with minerals "added for taste," and the label also states "Filtered Water Not From Source" and "ADDED MINERALS FOR TASTE". (*Id.* ¶ 26; Declaration of Andrew M. Hutchison ("Hutchison Decl.") in support of Defendant's Request for Judicial Notice, Ex. A.) Nothing on the Product label references Mexico. Consumers cannot use consumer fraud laws to police companies' use of their own brand names, and Topo Chico's affiliation with Mexico cannot support a claim that Defendant's use of water from elsewhere is misleading. *See, e.g.*, *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 674 (E.D.N.Y. 2017) (unreasonable as a matter of law for consumers to assume "Foster's" beer was brewed in Australia despite product's historical affiliation with that country).

Product – approximately $18.99 for a 12 pack ($1.58 per can) – than he would have if he had known that it did not contain tequila; that the value of the Product is less than represented because it does not contain tequila; and that Plaintiff chose the Product over other "Ranch Water" products based on his belief that the Product contained tequila. (*Id.* ¶¶ 41, 55-58.) On the basis of these allegations, Plaintiff asserts claims on behalf of a putative class of Illinois residents who purchased the Product "during the statutes of limitations for each cause of action alleged," and on behalf of a separate multi-state class consisting of purchasers from Texas, South Dakota, Wyoming, Idaho, Alaska, Iowa, Mississippi, West Virginia, Arkansas, South Carolina, Maine and Utah. (*Id.* ¶ 61.)

However, Plaintiff's interpretation of the Product's labeling is not that of a reasonable consumer. The Product's labeling does not contain any reference to tequila. Instead, Plaintiff claims that the use of the phrase "100% Agave" led him to believe that the Product would contain tequila. But while tequila is made from agave, agave and tequila are not synonymous, and even a cursory scan of the Product's ingredient list reveals that "agave syrup" is being used as a sweetener and not as alcohol. (*Id.* ¶ 26.) In fact, the back panel lists "agave syrup" and "alcohol" as separate ingredients and does not mention tequila anywhere or make any representation that the alcohol used in the Product is agave-based. There is no reason why a reasonable consumer would take "agave" to secretly mean "tequila" any more than a reasonable consumer would take "cane juice" to secretly mean "rum."

Further, Plaintiff alleges that the label "Hard Seltzer" misleads consumers into believing that the Product contains tequila because "'hard' in the context of alcohol refers to distilled spirits or hard liquor." (*Id.* ¶ 17.) But as described above and as conceded by Plaintiff, hard seltzers *by definition* are typically made with fermented alcohol and may be technically classified as beer. In fact, the Product's label specifically says "BEER" under the Surgeon General's warning and the

disclosures of "CONTAINS ALCOHOL" and "4.7% ALC/VOL." (Hutchison Decl. Ex. A.) And Plaintiff concedes that consumers do not expect distilled spirits with regard to the "fermented apple beverage of 'hard cider'" (Compl., ¶ 18); there, "hard" denotes the fact that the cider contains alcohol, but does not in any way signal whether the alcohol is fermented or distilled. (*Id.* ¶ 21.) Just as the adjective "hard" is used to distinguish alcoholic from nonalcoholic ciders (or lemonades or ice teas), "hard" simply distinguishes alcoholic seltzers from nonalcoholic seltzers.

## III. ARGUMENT

### A. <u>Legal Standard</u>

To avoid dismissal, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"; instead, the plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Assessing whether a complaint's allegations are plausible is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Claims of fraud or deceptive practices under the Illinois Consumer Fraud Act ("ICFA") require the plaintiff to meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738 (7th Cir. 2019). The plaintiff must allege the "who, what, when, where, and how" of the alleged fraud. *Id.*

A Rule 12(b)(1) motion challenges federal jurisdiction, including Article III standing, and the party invoking jurisdiction bears the burden of establishing standing. *Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1244 (7th Cir. 2021). In a facial challenge to standing based on plaintiff's allegations, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Silha v. ACT, Inc.* 807 F.3d 169, 173 (7th Cir. 2015).

## B.   The Product's Packaging is Not Misleading to a Reasonable Consumer

To survive a motion to dismiss under the ICFA,[6] a plaintiff must plausibly allege: "(1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010) (citing *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417, 775 N.E.2d 951 (2002)). To show that an act was deceptive,[7] a plaintiff must allege that a reasonable consumer would be deceived by the defendant's representations or omissions. *Bell*, 982 F.3d at 476. This standard "requires a probability that a significant portion of the general consuming public or of target consumers, acting reasonably in the circumstances, could be misled." *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020) (quoting *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016)). The Court may dismiss ICFA claims that are based on practices that are not misleading as a matter of law, such as where Plaintiff's interpretations are unreasonable or fanciful. *Bell*, 982 F.3d at 477.

---

[6] Plaintiff also raises claims on behalf of a multi-state class for violations of State Consumer Fraud Acts in 12 other states. (Compl. ¶ 61.) As Plaintiff has alleged only that he purchased the Product in Illinois, he does not have standing to bring these claims. *Muir v. Nature's Bounty, Inc.*, No. 15 C 9835, 2017 U.S. Dist. LEXIS 159679, at *28-32 (N.D. Ill. Sep. 28, 2017) (dismissing claims under other states' consumer fraud laws prior to class certification because plaintiff did not have "standing to bring claims under the laws of states in which he does not reside and did not purchase the product.") However, even if he did have standing, Plaintiff's allegations fail to state a claim under any of these statutes, as "'all require plaintiffs to prove that the relevant labels are likely to deceive reasonable consumers,' which 'requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Hamidani v. Bimbo Bakehouse LLC*, No. 22-cv-01026, 2023 U.S. Dist. LEXIS 5848, at *5 n.2 (N.D. Ill. Jan. 12, 2023) (citing *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 475–76 (7th Cir. 2020)).

[7] Plaintiff does not specify whether he is alleging that Defendant's conduct was deceptive or unfair. A practice is unfair under the ICFA if it "offends public policy;" "is immoral, unethical, oppressive, or unscrupulous;" or "causes substantial injury to consumers." *Benson v. Fannie Mae Confections Brands, Inc.*, 944 F.3d 639, 647 (7th Cir. 2019) (quoting *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d at 417–18, 775 N.E.2d at 961). Plaintiff makes no allegations suggesting that Defendant's representations were immoral, unethical, oppressive, or unscrupulous; rather, Plaintiff suggests that Defendant's representations were "false and misleading" or "deceptive." (*See, e.g.*, Compl. ¶¶ 26, 32-33, 40-41.) Defendant therefore solely addresses the "deceptive" prong of ICFA.

Despite tequila never being mentioned or included in the ingredient list, Plaintiff claims to have "read 'Ranch Water,' 'Hard Seltzer,' 'Spiked,' and '100% Agave & Real Lime Juice,' and expected the Product contained alcohol from tequila." (*Id.* ¶ 54.) This interpretation of the Product's label is unreasonable as a matter of law.

### 1. *"Ranch Water" Identifies the Flavor of Hard Seltzer*

Plaintiff asserts that because a ranch water *cocktail* is commonly understood to contain tequila, sparkling water, and lime, a reasonable consumer would expect that a "Ranch Water Hard Seltzer" would include the exact same ingredients. (Compl. ¶¶ 4-5, 16.) This assertion, which is the foundation of Plaintiff's entire case, is inherently flawed for multiple reasons. First, Plaintiff's own allegations contradict the notion that the ingredients in a ranch water cocktail are widely known, such that a significant portion of the general consuming public would associate certain ingredients with ranch water: Plaintiff asserts that the ingredients of ranch water have evolved over time, and alludes to "consumers' confusion" or "lack of knowledge" about ranch water. (*Id.* ¶¶ 4-5, 25, 96.)[8] *See*, *e.g.*, *Reinitz v. Kellogg Sales Co*., No. 21-cv-1239-JES-JEH, 2022 U.S. Dist. LEXIS 98580, at *8 (C.D. Ill. June 2, 2022) (holding that term "fudge" was not misleading as a matter of law where plaintiff failed to sufficiently plead facts suggesting that a significant portion of the consuming public would expect fudge to always contain milkfat.)

Second, even if it *were* reasonable for a consumer to expect that a ranch water *cocktail* would

---

[8] In fact, the article Plaintiff cites (*see* Compl. at p. 5 n.2, ¶¶ 31-35) suggests that tequila-based ranch water cocktails have not yet "hit the bigtime," and that the popularity of ranch water hard seltzers that do not contain tequila has actually changed the definition of "ranch water." (*See* Hutchison Decl. Ex. C). Because Plaintiff cites this article in support of the allegations in his Complaint, it is incorporated by reference and may be considered in a motion to dismiss. *See* Request for Judicial Notice in support of Defendant's Motion to Dismiss. If ranch water is indeed being "spread[]… to the masses" by companies producing hard seltzers – in other words, if most consumers are *first introduced* to the concept of ranch water through hard seltzers like Defendant's – this undermines Plaintiff's allegation that a significant portion of the general consuming public would have strong preconceived notions about what a "ranch water" cocktail would contain.

contain tequila, lime, and sparkling water, context makes clear that "Ranch Water" is not a freestanding descriptor of the Product. Rather, it appears only as a modifier of "Hard Seltzer," the term that is prominently used to identify the Product. Instead of communicating that the Product is a ranch water *cocktail*, the phrase "Ranch Water" simply specifies that it is the ranch water-flavored version of hard seltzer.

Courts regularly find that descriptors on a product's label are not misleading as a matter of law where they refer to the flavor of a product, rather than making a claim about the product's ingredients. For example, in *Reinitz*, the plaintiff argued that the name and packaging of defendant's Frosted Chocolate Fudge Pop-Tarts were misleading because the Pop-Tarts did not contain milkfat, which she considered integral to fudge. *Reinitz*, 2022 U.S. Dist. LEXIS 98580 at *1-2. The defendant argued that the term "fudge" referred to the taste of the product, not its ingredients, and that the product's packaging and description "accurately suggests that Frosted Chocolate Fudge Pop-Tarts taste like chocolate," differentiating the product from other Pop-Tart flavors. *Id.* at *10. The court agreed, holding that "fudge" could be considered a flavor rather than an ingredient, and dismissed plaintiff's ICFA claim. *Id.* at *10-11; *see also Hauger v. Dollar Gen. Corp.*, No. 1:21-cv-01270-JES-JEH, 2022 U.S. Dist. LEXIS 119715, at *12 (C.D. Ill. July 7, 2022) (holding that "a reasonable consumer could understand that the word honey on the label is a flavor designator, rather than an ingredient claim").

Just as the use of "fudge" to describe the flavor of the Pop-Tart in *Reinitz* was held not to promise that fudge flavor came from the use of milkfat, a common fudge ingredient, here, the use of "Ranch Water" to describe the flavor of Defendant's hard seltzer does not lead reasonable consumers to believe that the ranch water-flavor comes from the use of tequila. Similarly, in *DeMaso v. Walmart, Inc.* No. 21-cv-6334, 2023 U.S. Dist. LEXIS 20316 (N.D. Ill. Feb. 7, 2023),

8

the Court found that defendant's product's packaging, which included the words "fudge mint" and a picture of mint leaves, did not mislead consumers into believing that mint would be an ingredient rather than a flavor made artificially. *Id.* at *10-11. And here, unlike *DeMaso*, the Product label does not refer to our use the word "tequila" and does not include an image of a tequila bottle; rather, it only invokes the flavor of a ranch water cocktail, which some consumers *may* associate with the flavor of tequila.

As set forth above, "hard seltzer" is now a well-established product category. It is a beverage consisting of carbonated water, flavoring, and alcohol typically derived from fermented sugar – not distilled spirits. *See* Section II.A, *supra*. The designation "Ranch Water Hard Seltzer" clearly communicates to consumers that the Product is not a ranch water cocktail, but rather a ranch water-flavored variation on Topo Chico Hard Seltzer. A reasonable consumer would not disregard this context and view the phrase "ranch water" in isolation, as Plaintiff apparently did.

### 2. The Label Does Not Otherwise Suggest That the Product Contains Tequila

For the reasons set forth above, the Product label does not communicate that the Product is a ranch water cocktail containing tequila, but rather a ranch water-flavored hard seltzer. The rest of the Product label only confirms that the Product does not contain tequila. And while the Seventh Circuit does not *require* consumers to consult a product's ingredient list to determine whether a product actually contains an ingredient advertised on the product's front label, deceptive advertising claims must still "take into account all the information available to consumers and the context in which that information is provided and used." *Bell v. Publix Super Mkts., Inc.*, 982 F.3d 468, 477 (7th Cir. 2020). The fact that the Product does not indicate *anywhere* that it contains tequila – and, in fact, indicates the opposite by labeling the Product as a "hard seltzer" and listing "alcohol," "agave syrup," and "lime juice" in the ingredient list – makes Plaintiff's expectation that the Product would contain tequila unreasonable as a matter of law: "A reasonable consumer would not read into the

9

label what is simply not there[.]" *Zahora v. Orgain LLC*, No. 21 C 705, 2021 U.S. Dist. LEXIS 213525, at *9 (N.D. Ill. Nov. 4, 2021); *see also Lederman v. Hershey Co*., No. 21-cv-4528, 2022 U.S. Dist. LEXIS 149339, at *10-15 (N.D. Ill. Aug. 19, 2022) (finding product labeled "hot fudge" "comported with its packaging" and was not misleading as to its contents).

The context cues on the Product label that Plaintiff apparently construed as further indicating that the Product contains tequila in fact indicate the exact opposite. For example, the fact that the Product advertises that it is made with "100% Agave" does not support Plaintiff's fanciful extrapolation that this agave must actually indicate that the Product is made with tequila, merely because tequila is made from agave. *See, e.g.*, *Biczo v. Ferrara Candy Co*., No. 22-cv-01967, 2023 U.S. Dist. LEXIS 46294, at *4-6 (N.D. Ill. Mar. 20, 2023) (finding phrase "Made With Real Milk" would not lead a reasonable consumer to make the "analytical jump" to believing defendant's caramel product was made with milk *fat*, rather than incorporating milk in some other form). Plaintiff does not allege that a significant portion of the consuming public even knows that tequila is made from "100% Agave," and certainly cannot allege that a significant portion of the consuming public would see the two words as synonymous (as they are not). In fact, this reading is counterintuitive: if the product contained tequila, a reasonable consumer would likely expect the Product label to state that it contains tequila, not "100% Agave." And if Plaintiff had consulted the Product's ingredient list, he would have found – as the Complaint acknowledges – that it contains an accurate list of the product's ingredients, including "alcohol" and "agave syrup," and does not list tequila as an ingredient. (Compl. ¶ 26.)

Likewise, Plaintiff's contention that the term "hard" exacerbates the purported confusion by suggesting the presence of "distilled spirits" is groundless. As set forth above, hard seltzer is widely understood to be a beverage made with alcohol from fermented cane sugar or malted barley. And as

the Complaint concedes, other "hard" beverages, including "hard cider," do not contain distilled spirits. (Compl. ¶¶ 118-21.) In the context of "hard seltzer," then, "hard" conveys that the product contains alcohol, not that it includes distilled spirits. *See Suzie's Brewery Co. v. Anheuser-Busch Cos., LLC*, 519 F. Supp. 3d 839, 847 n.6 (D. Or. 2021) (explaining in reference to "hard seltzers" that "[w]hen modifying the name of a beverage, the adjective 'hard' means that the drink contains alcohol and is an 'adult beverage.'"). Similarly, the term "spiked" merely distinguishes an alcoholic beverage from a nonalcoholic one and does not refer exclusively to distilled spirits. *See* Merriam Webster's Dictionary (defining spiked in relation to beverages as "containing alcohol")[9]; Collins Dictionary ("containing drugs or alcohol.")[10]. Plaintiff cannot use a fictitious definition of the term "hard" or "spiked" to redefine the meaning of "hard seltzer."

The ready-to-drink ranch water cocktail cited in the Complaint supports this point. In stark contrast to the Product's packaging, the Ranch Rider Spirits Co. Ranch Water product pictured in the Complaint clearly labels itself not as a hard seltzer but as a "Premium Tequila Seltzer"; lists tequila as one of three ingredients on the front of the can; and has the word "Spirits" in its brand name. (*See* Compl. ¶ 25.) In fact, the Ranch Rider Ranch Water product has "This one has Tequila in it" emblazoned across its secondary packaging, with the word "Tequila" taking up almost the entire side of the package. (Hutchison Decl. Ex. B.) And while Topo Chico's Ranch Water Hard Seltzer advertises that it is made with "100% Agave & Real Lime Juice" with "minerals added for taste," the Ranch Rider Spirits product advertises that it is made with "only Reposado Tequila, sparkling water, and real lime." (*See id.* ¶¶ 1, 25.) Though Plaintiff alleges these statements should be read to mean the exact same thing, they are clearly not the same. Rather, the Ranch Rider Spirits Co. product's heavy emphasis on tequila – including labeling itself a "tequila seltzer" rather than

---

[9] *See* https://www.merriam-webster.com/dictionary/spiked (last accessed Mar. 27, 2023.)
[10] *See* https://www.collinsdictionary.com/dictionary/english/spiked (last accessed Mar. 27, 2023).

"hard seltzer" – seems to indicate that tequila is being advertised as a *differentiating* factor, and not one that a reasonable consumer would expect a ranch water flavored *hard seltzer* to contain. And the addition of tequila is clearly reflected in the product's price point: where Defendant's Product sells for approximately $18.99 per 12 pack, Ranch Rider's Product sells for $13.99 per 4 Pack, the equivalent of $42 per 12 pack. (*See* Compl. ¶ 41; Hutchison Decl. Ex. B.) The Complaint's reference to this product thus undermines Plaintiff's claim of deception by highlighting the ways in which the Product labeling did not suggest that it was a ready-to-drink ranch water cocktail made with tequila.

For all the foregoing reasons, Plaintiff's interpretation of the Product label is fanciful and unreasonable as a matter of law and his ICFA claim, along with any analogous claims under other state consumer statutes, should be dismissed.

### C.      Plaintiff's Fraud Claim Fails for the Same Reasons as His ICFA Claim

Plaintiff's common law fraud claim fails for the same reasons as his consumer fraud claims. In Illinois, to support a claim for fraud, a plaintiff must allege "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 496, 675 N.E.2d 584, 591 (1996). Because Plaintiff has not plausibly alleged that the Product contained a false statement of material fact with regard to his ICFA claim, his common law fraud claim must also be dismissed. *See Hamidani*, 2023 U.S. Dist. LEXIS 5848, at *8 (dismissing fraud claim where representation was held not misleading as a matter of law with regard to ICFA claim); *see Biczo*, 2023 U.S. Dist. LEXIS 46294, at *8 (same).

### D.      Plaintiff's Warranty Claims Fail as a Matter of Law

In order to bring a claim for breach of implied or express warranty, 810 ILCS 5/2-607(3)(a) requires a plaintiff "within a reasonable time after he discovers or should have discovered any breach

notify the seller of the breach or be barred from any remedy." *Hamidani*, 2023 U.S. Dist. LEXIS 5848 at *9. Where a plaintiff does not allege legally sufficient notice in the complaint, the Court may rule on the issue at the motion to dismiss stage. *O'Connor v. Ford Motor Co*., 477 F. Supp. 3d 705, 717 (N.D. Ill. 2020).

Here, Plaintiff alleges that Defendant received notice "and should have been aware of these issues" due to "complaints by third-parties" and "by consumers through online forums." (Compl. ¶ 85.) This is insufficient as a matter of law. Plaintiff does not allege that he gave written notice to Defendants in accordance with 810 ILCS 5/2-607(3)(a). And while the notice requirement may be excused where Defendant has *actual knowledge* of the alleged defect (*see Connick*, 174 Ill. 2d at 492), Plaintiff here only alleges that Defendant *should have been aware* of the defect. Further, "generalized knowledge about the … concerns of third parties is insufficient to fulfill plaintiffs' UCC notice requirement. …[I]t is essential that the seller be notified that *this particular transaction* is 'troublesome and must be watched.'" *Id.* at 493 (emphasis added) (citations omitted); *see also O'Connor*, 477 F. Supp. 3d at 715-16. Thus, because Plaintiff does not allege that he gave direct pre-suit notice, Plaintiff's state law warranty claims fail.

Plaintiff's claim for breach of implied warranty also fails because Plaintiff does not allege that the product was not fit for consumption, which represents the Product's ordinary use. *See*, *e.g.*, *Akers v. Costco Wholesale Corp.*, No. 3:21-CV-01098-NJR, 2022 U.S. Dist. LEXIS 177837, at *16-17 (S.D. Ill. Sep. 29, 2022). The absence of an expected ingredient does not render a product unfit or not merchantable. *Id.* (the fact that sparkling water drink allegedly contained less black raspberry than label implied did not render the beverage unfit for its ordinary purpose.)

Plaintiff also claims that Defendant violated the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2310(d)(1), which creates a federal cause of action for breach of warranty.

Because his state law warranty claims fail, however, his MMWA claim also fails. *See Smith v. Gen. Mills Sales, Inc.*, No. 22 CV 1529, 2023 U.S. Dist. LEXIS 35701, at *17 (N.D. Ill. Mar. 3, 2023) ("The Magnuson-Moss Warranty Act incorporates state-law notice requirements, so if plaintiff's notice is insufficient under Illinois law, it's also insufficient under federal law.").

**E.** **The Economic Loss Rule Bars Plaintiff's Negligent Misrepresentation Claim**

Plaintiff cannot sustain his claim for negligent misrepresentation because he alleges a purely economic loss. (Compl. ¶¶ 41, 55-58 (alleging Plaintiff paid more for the Product than he would have if he knew it did not contain tequila); *Smith*, 2023 U.S. Dist. LEXIS 35701 at *18-19 (dismissing plaintiff's claim for negligent misrepresentation under economic loss rule where plaintiff alleged only that she paid more for the product than she would have if she had known its true contents). There are only two exceptions to the economic loss doctrine: (1) if defendant intentionally made false representations; or (2) if defendant is "in the business of supplying information for the guidance of others in their business transactions." *Moorman Mfg. Co. v. Nat'l Tank Co*., 91 Ill. 2d 69, 88-89, 435 N.E.2d 443, 452 (1982). These exceptions do not apply. As discussed above, Plaintiff's claim that Defendant made intentionally false representations fails as a matter of law. Further, "as a manufacturer of goods, Defendant is 'not in the business of supplying information.' … Rather, the information supplied to consumers is ancillary to the sale of its product." *Hamidani*, 2023 U.S. Dist. LEXIS 5848, at *9 (citations omitted); *see also Biczo*, 2023 U.S. Dist. LEXIS 46294, at *8. Thus, the economic loss rule applies and Plaintiff's negligent misrepresentation claim must be dismissed. *See Hamidani*, 2023 U.S. Dist. LEXIS 5848, at *8-9.

**F.** **Unjust Enrichment is Not an Independent Cause of Action**

Further, Illinois does not recognize a separate cause of action for unjust enrichment; rather, a claim for unjust enrichment must be predicated on another cause of action "such as fraud, duress, or undue influence." *All. Acceptance Co. v. Yale Ins. Agency*, 271 Ill. App. 3d 483, 492-93, 648

N.E.2d 971, 977 (1st Dist. 1995). Because Plaintiff's other causes of action all fail, however, Plaintiff's cause of action for unjust enrichment also fails. *Hamidani*, 2023 U.S. Dist. LEXIS 5848, at *11; *Biczo*, 2023 U.S. Dist. LEXIS 46294, at *9.

      **G.**      **Plaintiff Does Not Have Standing to Seek Injunctive Relief**

Plaintiff does not have standing to seek injunctive relief.[11] (Compl. ¶ 68; p. 13 (Prayer for Relief).) "To establish standing under Article III, a plaintiff must show: (1) she suffered an injury-in-fact; (2) that is fairly traceable to the defendant's conduct; and (3) that is likely to be redressed by a favorable judicial decision." *Hamidani*, 2023 U.S. Dist. LEXIS 5848, at *3-4 (citing *Cothron v. White Castle Sys., Inc.*, 20 F.4th 1156, 1160 (7th Cir. 2021). Here, Plaintiff cannot establish an injury-in-fact for injunctive relief because he is not at risk of future deception. *Id.* (a plaintiff must show defendant's conduct will likely cause her to suffer damages in the future to establish injury-in-fact). Courts have recognized that plaintiffs in false advertising cases are not in danger of being deceived again by the alleged misrepresentations supporting their lawsuits. *Id.* at *4 (citing cases). Because Plaintiff is now aware of any alleged misrepresentations regarding the Product, he does not have standing under Article III to pursue injunctive relief and his request for such relief should be dismissed pursuant to Rule 12(b)(1).

**IV.**      **CONCLUSION**

For these reasons, Defendant respectfully requests that the Court grant its Motion to Dismiss in its entirety with prejudice.

Dated:    March 27, 2023          LOEB & LOEB LLP

                                 By: /s/ Andrew M. Hutchison
                                     Laura K. McNally
                                     Emily H. Stone
                                     321 North Clark Street, Suite 2300

---

[11] Plaintiff's request for injunctive relief also fails because he has failed to allege any plausible claim for relief. *See Smith*, 2023 U.S. Dist. LEXIS 35701 at *20.

Chicago, IL 60654
Telephone:  312.464.3100
Facsimile:  312.464.3111
lmcnally@loeb.com
estone@loeb.com

Andrew M. Hutchison
Two Embarcadero Center, Suite 2510
San Francisco, CA 94111
Telephone:  415.903.3200
Facsimile:  415.903.3299
ahutchison@loeb.com

*Attorneys for Defendant*
*Molson Coors Beverage Company USA, LLC*